IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**ANTHONY I. BERNARDINO,**

    Petitioner,

v.                                        CASE NO. 17-3023-JWL

**N.C. ENGLISH, Warden,**
**USP-Leavenworth,**

    Respondent.

**MEMORANDUM AND ORDER**

This matter is a petition for writ of habeas corpus filed under 28 U.S.C. § 2241. Petitioner, a prisoner in federal custody at USP-Leavenworth ("USPL"), proceeds *pro se*. Petitioner challenges prison disciplinary proceedings while in custody at USPL. The Court issued an Order to Show Cause (Doc. 3), Respondent filed an Answer and Return (Doc. 6), Petitioner filed a Traverse (Doc. 7), and the matter is ready for resolution. The Court finds that Petitioner does not allege facts establishing a federal constitutional violation and denies relief.

**I. Background**

Petitioner is incarcerated with the Federal Bureau of Prisons ("BOP") at USPL. Petitioner is currently serving a sentence imposed in the Northern District of Oklahoma for Conspiracy to Possess with Intent to Distribute and Distribution of 500 Grams or More of Methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(viii). (Doc. 6–1, at 14.) Petitioner has a projected release date of July 17, 2018, via good conduct time release. *Id*. at 13. Disciplinary proceedings at USPL for violating Code 108, possession of a hazardous

tool, and Code 305, possession of anything not authorized, resulted in sanctions which included Petitioner's loss of forty-one days of good conduct time. Petitioner also lost his eligibility to receive a one-year credit for participating in the Residential Drug Abuse Program ("RDAP"). Petitioner alleges in his Petition that the findings of the Discipline Hearing Officer ("DHO") were faulty in finding Petitioner guilty of violating Code 108—possession of a hazardous tool. Petitioner claims that the DHO stated that the item found was a cell phone charger, but no cell phone was found to substantiate this finding. Petitioner claims that in other cases the item found would be considered contraband in violation of Code 305. Petitioner asks the Court to order the DHO to rehear the incident and to reduce or expunge the violation, to restore his forty-one days of good conduct time, and to remove the discipline from his record so he can receive his one-year reduction in his sentence under 18 U.S.C. § 3621(e) for participation in the RDAP.

## II. Facts

Petitioner was deemed eligible for RDAP and began the unit-based component of the program in May 2015. (Doc. 6–3, at 3, 35.) Petitioner completed the unit-based component in February 2016, began participating in the follow-up services, and continued to live on the RDAP housing unit. *Id*. On August 10, 2016, the treatment team met with Petitioner to discuss contraband (tattoo needles) found in his cell. *Id*. at 3, 37. During this meeting, Petitioner was passive aggressive in his communication and did not appear open to feedback. *Id*. When questioned about what was found in his cell, he was argumentative and did not take responsibility for his actions.[1] *Id*. Petitioner was advised that his recent behavior and lack of openness to feedback did not exemplify a program completer living on the RDAP housing unit. *Id*. At this time, he was informed he would be transferred to another housing unit on August 12,

---

[1] "For instance, when asked to describe what the officer found in his cell, he replied, 'You tell me! You guys are the ones that called me in here!'" (Doc. 6–3, at 37.)

2016. *Id*. at 3. However, Petitioner was placed in the Special Housing Unit ("SHU") on August 11, 2016, after additional contraband was found in his cell. *Id*.

On August 11, 2016, while conducting a cell inspection of the cell assigned to Petitioner and another inmate, several items were located in the common area. Specifically, one homemade "stinger" comprised of wires and an electrical plug, one homemade cell phone charger, and one security bit were found underneath the second locker. (Doc. 6–1, at 5, 65.) Additionally, a homemade stamp and ink pad with letters spelling "Recreation Supervisor Hobby Craft" were found. *Id*.

The Drug Abuse Program Coordinator who conducted the cell search wrote Incident Report ("IR") No. 2883219 for Petitioner on August 11, 2016, for violating Code 108, possession of a hazardous tool, and Code 305, possession of anything not authorized. *Id*. at 65. The IR identified pertinent facts related to the matter, including the date and time of the incident, the location of the incident, a description of the items found, the specific code charges, the specific code number associated with the prohibited act, and a factual description of the incident. *Id*. The reporting staff member signed the IR at 2:50 p.m. on August 11, 2016. *Id*. The IR was delivered to Petitioner on August 11, 2016 at 6:31 p.m. *Id*. The IR was forwarded to the Unit Discipline Committee ("UDC") for further disposition. *Id*.

Petitioner appeared before the UDC on August 12, 2016. *Id*. Petitioner made no comment at this time. The UDC referred the matter to the DHO for further disposition, due to the severity of the charge. *Id*. Petitioner was given a Notice of Discipline Hearing before the DHO on August 12, 2016, which identified the specific violation of Codes 108 and 305. *Id*. at 69. Petitioner was given a copy of the Inmate Rights at Discipline Hearing on August 12, 2016. *Id*. at 71. Included among these rights was the opportunity to have a staff representative assist

with the Discipline Hearing, the right to present documentary evidence on Petitioner's behalf, and the right to present a statement to the DHO or remain silent. *Id*. On August 12, 2016, Petitioner signed both the Notice of Discipline Hearing and the Inmate Rights at Discipline Hearing Form. *Id*. at 69, 71. Petitioner indicated that he did not wish to call any witnesses and did not want a staff representative to assist him during the disciplinary process. *Id*.

A hearing was held before the DHO concerning IR No. 2883219 on August 24, 2016. The DHO reviewed Petitioner's due process rights with him at the hearing and he stated he understood those rights. *Id*. at 73. Petitioner did not request a staff representative, did not request any witnesses, and did not provide any documentary evidence. *Id*. at 73–74.

Petitioner appeared at the DHO hearing and presented a verbal statement. Petitioner stated, "[i]t is a transformer I was using for tattooing. It had some extra adapters with it. It's mine. The stamp is mine too." *Id*. at 73. The DHO recalls that Petitioner was referring to the item determined to be a cell phone charger when admitting possession of the item. *Id*. at 7. In making her determination, the DHO considered Petitioner's verbal statements, or lack thereof, during the investigation, UDC hearing, and before the DHO. *Id*. at 74.

The DHO also considered five photos taken by the investigating Lieutenant of the items found in Petitioner's cell on August 11, 2016. *Id*. One photo depicts a black cord with a plug and seven adapters. *Id*. at 77. Based on her correctional experience, the DHO determined this item to be a cell phone charger. *Id*. at 8. Another photo depicts a black security bit with a silver handle attached. *Id*. at 79. Based on her correctional experience, the DHO determined this item to be a security bit. *Id*. at 8. One photo depicts black and yellow wires with a metal coil attached to the end. *Id*. at 81. Based on her correctional experience, the DHO determined the item in this photo to be a "stinger." *Id*. at 8. One photo depicts an altered black cord with metal

pieces throughout. *Id*. at 83. The final photo depicts a stamp in two pieces that reads "Recreation Supervisor Hobby Craft." *Id*. at 85.

The DHO also considered the IR written by the reporting staff member which described the items found as well as the location in the common area of Petitioner's assigned cell. *Id*. at 74. Based on the evidence, the DHO found Petitioner committed the prohibited act of possession of a hazardous tool in violation of Code 108, and the prohibited act of possession of anything not authorized in violation of Code 305. *Id*. In making her determination, the DHO placed greater weight on the IR written by the reporting staff member and the supporting photographs. *Id*. The DHO also considered Petitioner's admission to possessing the stamp and cell phone charger, and drew a negative inference against Petitioner based on his silence before the investigating Lieutenant and UDC. *Id*. While she considered Petitioner's defense that the item was a "transformer" used for tattooing, the DHO was not convinced of his innocence. *Id*. at 9. Based on all of the evidence presented, the DHO determined Petitioner committed the prohibited act of Code 108, possession of a hazardous tool and Code 305, possession of anything not authorized. *Id*. at 74. While multiple items in Petitioner's possession are considered hazardous tools, Petitioner was only charged and held responsible for one violation of Code 108. *Id*. at 9, 74. The DHO determined Petitioner did possess the stamp and ink pad which are unauthorized items in violation of Code 305. *Id*.

The DHO sanctioned Petitioner for the Code 108 violation with the disallowance of forty-one days of good conduct time, ninety days loss of email privileges, and ninety days loss of commissary. *Id*. at 74. The DHO sanctioned Petitioner for the Code 305 violation with thirty days loss of phone and visiting privileges.[2] The disciplinary sanctions imposed were consistent

---

[2] Petitioner does not challenge the DHO's finding that he violated Code 305. (Doc. 7, at 1.)

5

with those allowed by policy, and were imposed in an effort to deter this type of misconduct in the future. *Id*. at 9–10, 75.

Petitioner was advised of the DHO's findings and his ability to appeal through the administrative remedy process within twenty days of the receipt of the report. *Id*. at 10, 75. The DHO subsequently generated a written report which she signed on August 30, 2016. The report contained a written statement of the evidence relied upon and the reasons for the sanctions. *Id*. at 73–75. A copy of the report was delivered to Petitioner on September 8, 2016. *Id*. at 10, 75. The DHO is a certified DHO, an impartial hearing officer that was not personally involved with the incident, the UDC hearing, or any other part of the initial disciplinary process. *Id*. at 10.

Following Petitioner's disciplinary proceedings, the treatment team met to discuss his status in the follow-up program. (Doc. 6–3, at 4.) At that time, the treatment team determined Petitioner would be expelled from the RDAP follow-up program based on his recent behavior, including the nature of the contraband found in his cell, his attitude towards staff, and his violation of Disciplinary Codes 108 and 305. *Id*. at 4. Petitioner was not given a formal warning prior to expulsion as it was determined his lack of compliance was of such magnitude that his continued participation would have created an immediate and ongoing problem for staff and other inmates. *Id*. at 4.

The treatment team met with Petitioner and advised him of his expulsion on September 1, 2016. *Id*. at 4, 37. He was also advised that he was no longer eligible for early release pursuant to 18 U.S.C. § 3621(e)(2). *Id*. Petitioner was provided with the corresponding Change in RDAP and Section 3621(e) Status form which indicated he was expelled and is no longer eligible for early release. *Id*. Petitioner refused to sign the change in status form.[3] *Id*. at 4, 40. Petitioner

---

[3] The Change in RDAP and Section 3621(e) Status Form is incorrectly dated August 1, 2016. This form was signed and presented to Petitioner on September 1, 2016. (Doc. 6–3, at 4, n.2.)

was expelled from the RDAP program in accordance with Program Statement 5330.11, *Psychology Treatment Programs* and the Change Notice effective May 26, 2016. *Id*. at 4.

On September 12, 2016, Administrative Remedy ("AR") No. 875836–R1 was received in the North Central Regional Office. (Doc. 6–2, at 4, 26.) In this appeal, Petitioner challenged his August 2016 discipline, specifically the violation of Code 108, Possession of a Hazardous Tool, and asked that "the Incident Report should be expunged or reduced to show that it was a violation of Code 305: Possession of Anything Not Authorized, and not a Code 108: Hazardous Tool. All privileges should be restored and all good conduct time restored per policy." *Id*. at 29–30. Petitioner admitted to possessing the items found in his cell except for the security bit. He asserted the items found were not hazardous tools under Discipline Code 108. Petitioner did not raise any issues regarding his expulsion from the RDAP or associated early release eligibility under 18 U.S.C. § 3621(e). *Id*. at 4. AR 875836–R1 was reviewed, denied by the Regional Director, and closed on November 9, 2016. *Id*. at 4, 28.

Petitioner filed AR 875836–Al with Central Office, which was received on November 29, 2016. *Id*. at 4, 32. In this appeal, Petitioner again admitted to possessing two of the three items but challenged their classification as hazardous tools, and requested "that the Incident Report be expunged or amended as a contraband violation. And that all good conduct time, privileges, and the year RDAP sentence reduction be restored." *Id*. at 33. A response by Central Office was due to Petitioner by January 28, 2017. To date, Central Office has not yet responded to AR 875836–Al. *Id*. at 4. Accordingly, Petitioner has exhausted his administrative remedies regarding his August 2016 discipline. *Id*. at 4. Further, Petitioner has not filed any other remedies while incarcerated with the BOP. *Id*. at 5.

**III. Discussion**

**1. Exhaustion**

Generally, a federal prisoner must exhaust available administrative remedies before commencing a habeas corpus petition under 28 U.S.C. § 2241. *Williams v. O'Brien*, 792 F.2d 986, 987 (10th Cir. 1986) (per curiam). The BOP's four-part administrative remedy program is codified at 28 C.F.R. § 542. Under the administrative remedy program for inmates, an inmate is required to first attempt informal resolution of the complaint, and if unsuccessful, he must raise his complaint, with the informal resolution attached, to the Warden of the institution where he is confined. If dissatisfied with that response, he may appeal his complaint to the Regional Director. If the inmate is dissatisfied with the Regional Director's response, the inmate may appeal to the National Inmate Appeals Administrator in the Office of the General Counsel in Washington, D.C. ("Central Office"). Generally, an inmate has not exhausted his remedies until he has sought review and received a final substantive response at all three levels. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (finding that exhaustion requires "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)") (citation omitted)). For certain disciplinary actions, involving a decision by the DHO, an inmate may appeal the decision directly to the Regional Director, and by-pass the institution-level procedures. *See* 28 C.F.R. § 542.14(d)(2). If an inmate does not receive a response within the allotted time for reply, including extensions, the inmate may consider the absence of a response to be a denial at that level. *See* 28 C.F.R. § 542.18.

Respondent acknowledges that Petitioner has exhausted his administrative remedies with respect to his August 2016 discipline. However, Respondent argues that Petitioner did not raise any issues regarding his September 2016 expulsion from RDAP in AR Nos. 875836–Rl or

875836–Al, and that therefore Petitioner has not exhausted his administrative remedies for the issues relating to RDAP raised in his Petition. The Court agrees.

To properly exhaust administrative remedies, the petitioner must have presented the same claims in the administrative grievance that appear in the court petition. *Williams v. Wilkinson*, 659 F. App'x 512, 514 (10th Cir. 2016) (citing *Woodford*, 548 U.S. at 94). Although Petitioner requests in his administrative appeal that "all good conduct time, privileges, and the year RDAP sentence reduction be restored," he did not argue that his expulsion from RDAP was improper. Petitioner states that "it really doesn't matter if it was stated as it would be required by policy to reinstate the year sentence reduction if the incident were expunged." (Doc. 7, at 1.) If this were true, Petitioner would not be entitled to the RDAP sentence reduction because the Court finds that the DHO's decision regarding the incident was supported by "some evidence" and the Petitioner received due process in his disciplinary proceedings.

However, it does not appear that his expulsion from the RDAP was based solely on his violation of Code 108. The regulations in effect prior to May 2016 provided that an inmate who is found to have committed a prohibited act involving drugs, alcohol, violence, escape, attempted escape or any 100-level series incident "will be removed from RDAP immediately." *See* 81 Fed. Reg. 24484–02, at p. 24485 (April 26, 2016) (removing section (g) from 28 C.F.R. § 550.53). The provision was not in effect after May 2016, and the current regulation at 28 C.F.R. § 550.53 provides in part as follows:

> (g) Expulsion from RDAP.
> (1) Inmates may be removed from the program by the Drug Abuse Program Coordinator because of disruptive behavior related to the program or unsatisfactory progress in treatment.
> (2) Ordinarily, inmates must be given at least one formal warning before removal from RDAP. A formal warning is not necessary when the documented lack of compliance

> with program standards is of such magnitude that an inmate's continued presence would create an immediate and ongoing problem for staff and other inmates.
> (3) We may return an inmate who withdraws or is removed from RDAP to his/her prior institution (if we transferred the inmate specifically to participate in RDAP).

28 C.F.R. § 550.53 (g) (May 26, 2016). Respondent states that the treatment team determined Petitioner would be expelled from the RDAP follow-up program based on his recent behavior, including the nature of the contraband found in his cell, his attitude towards staff, and his violation of Disciplinary Codes 108 and 305. Petitioner was not given a formal warning prior to expulsion as it was determined his lack of compliance was of such magnitude that his continued participation would have created an immediate and ongoing problem for staff and other inmates. Therefore, Petitioner should have filed an administrative grievance regarding his expulsion from the RDAP under the regulation in effect at the time of his incident. Because Petitioner failed to do so, the agency was not given the opportunity to correct its own mistakes or to develop a useful record for subsequent judicial determination. *See Williams*, 659 F. App'x 512, (citing *Woodford*, 548 U.S. at 89).

**2. Standard of Review**

To obtain habeas corpus relief, an inmate must demonstrate that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S. C. § 2241(c)(3). A federal prisoner has a constitutionally protected liberty interest in his earned good-conduct time. *See Brown v. Smith*, 828 F.2d 1493, 1494 (10th Cir. 1987). Therefore, Petitioner was entitled to due process at his disciplinary hearing. *Howard v. Bureau of Prisons*, 487 F.3d 808, 811 (10th Cir. 2007). However, because prison disciplinary proceedings "take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so," the "full panoply of rights due a defendant in

[criminal] proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556, 561 (1974); *see also Abdulhaseeb v. Ward*, 173 F. App'x 658, 661 (10th Cir. 2006).

In *Wolff*, the Supreme Court held that in order to satisfy due process in a prison disciplinary proceeding, the inmate must receive: (1) "advance written notice of the claimed violation" no less than 24 hours prior to the hearing; (2) an opportunity "to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals;" and (3) a "written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action." *Wolff*, 418 U.S. at 563–66 (citations omitted); *see also Abdulhaseeb*, 173 F. App'x at 661 (citing *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985)); *Smith v. Maschner*, 899 F.2d 940, 946 (10th Cir. 1990). Additionally, there must be some evidence to support the decision and the decisionmaker must be impartial. *Gwinn v. Awmiller*, 354 F.3d 1211, 1219 (10th Cir. 2004) (citing *Wolff*, 418 U.S. at 592) (Marshall, J., concurring)).

### 3. Procedures

The Court has no difficulty finding that Petitioner was afforded all the due process protections mandated by *Wolff*, and Petitioner is not claiming otherwise. The administrative record and the undisputed facts plainly demonstrate that Petitioner was afforded all three procedural protections mandated by *Wolff*. He was given advance written notice of the charge by delivery of the IR more than 24 hours prior to the DHO hearing. The IR was delivered to Petitioner on August 11, 2016, and his DHO hearing was held on August 24, 2016. Petitioner was advised of his procedural rights before the DHO hearing and given the opportunity to present witnesses and documentary evidence in his defense. Petitioner personally appeared at the hearing and provided a verbal statement. Petitioner was provided a copy of the DHO's

written statement, which sets forth the evidence relied upon and the reasons for the disciplinary action and sanctions. The DHO is a certified DHO, an impartial hearing officer that was not personally involved with the incident, the UDC hearing, or any other part of the initial disciplinary process.

### 4. Some Evidence

The Court finds that there was "some evidence" to support the DHO's decision. Where the due process requirements of *Wolff* are met, as is the case here, the decision of the DHO will be upheld if there is "some evidence" to support the decision. *Hill*, 472 U.S. at 455. "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." *Terry v. Jones*, 259 F. App'x 85, 86 (10th Cir. 2007), *cert. denied*, 554 U.S. 924 (2008) (quoting *Hill*, 472 U.S. at 456). A decision to revoke good time credits would only violate due process if the record is "devoid of evidence, providing no support for a disciplinary board's decision." *Id.* (citing *Hill*, 472 U.S. at 457). "The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board." *Hill*, 472 U.S. at 457.

Petitioner does not argue that he is not responsible for the items found in his cell. Under the Inmate Discipline Program, inmates can be held accountable for items found in common areas, which is the area of the cell that is available for use by more than one inmate. All inmates assigned to the cell are responsible for ensuring their cell is free of contraband. (Doc. 6–1, at 3, 45.) Similar information is available in P.S. 5270.09 and corresponding regulations, which are available to the inmate population in the inmate law library. Included among this information are details about the charges for various disciplinary code violations, including Code 108,

possession of a hazardous tool and Code 305, possession of anything not authorized. *Id*. at 3, 30, 36.

Prohibited act Code 305 states: "Possession of anything not authorized for retention or receipt by the inmate, and not issued to him through regular channels." *Id*. at 4, 36. Prohibited act Code 108 states: "Possession, manufacture, introduction, or loss of a hazardous tool (tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hacksaw blade, body armor, maps, handmade rope, or other escape paraphernalia, portable telephone, pager, or other electronic device)." *Id*. at 4, 30. A portable telephone is an example included in the non-exhaustive list of items in P.S. 5270.09, each of which is considered a hazardous tool. The BOP considers a cell phone charger as falling within this definition because it is an essential component to the operation of a cell phone. *Id*. at 4. Cell phones pose a great security risk in a correctional environment as they enable unmonitored communication which could be used to facilitate an escape or introduce contraband to the institution. *Id*. at 4.

A security bit is a tool, similar to a screwdriver, which among other things can be used to gain access to outlets, panels, fixtures, and unauthorized areas or used to alter or remove locking devices from cell doors. *Id*. at 4. Given these possible functions, security bits can be used in an escape or attempted escape and create a general risk to institutional security. *Id*. at 4. The BOP therefore considers them hazardous tools. *Id*. at 4.

"Stingers" are usually comprised of altered wires with exposed metal on one end. *Id*. at 4. The "stinger" can be plugged into an electrical current in order to heat the metal end. *Id*. at 4. The BOP considers a "stinger" a hazardous tool because it is an altered electrical device that can be used to harm other inmates or staff and has the potential for explosions or fires. *Id*. at 4.

On May 6, 2016, a memo was signed by the USP Leavenworth Captain and posted to the inmate electronic bulletin outlining USP Leavenworth's policy relating to "stingers." *Id*. at 5, 61. The memo reminds inmates that "stingers" are "devices which are generally described as hand held instruments used to heat, fry, or boil food and other items via electrical current, fed through wires to a single unit inserted into an utensil, food, or liquid items." *Id*. The memo provides that these instruments are considered hazardous tools in the correctional environment because they are homemade or altered instruments which have the potential for explosions, fires, and injury to persons. *Id*. Further, the memo specifically states, "[i]f you are caught with a 'stinger' you will be charged with a Code 108, Possession of a Hazardous Tool, and referred to the Disciplinary Hearing Officer for final disposition." *Id*.

Petitioner argues that the DHO's findings are not consistent with findings dealing with similar offenses. Petitioner argues that normally the items found in his cell would be considered contraband. Petitioner claims that "stingers" were previously considered to be contraband and now due to the May 6, 2016 Memo, stingers are now charged as Code 108 violations. (Doc. 7, at 2.) Petitioner claims that stingers are not treated as dangerous contraband at other BOP institutions.

The May 6, 2016 Memo clearly put Petitioner on notice that stingers were considered hazardous tools. In addition, other courts have found that Code 108's description of "hazardous tools" and non-exhaustive list of prohibited items is "adequate to put a person of ordinary intelligence on notice that a stinger is prohibited under the code." *Tran v. Langford*, No. CV 16-1869 VBF (FFM), 2017 WL 990477, at *2 (C.D. Calif. Jan. 23, 2017) (finding that DHO's decision that possession of a stinger violated Code 108 was supported by sufficient evidence and noting that stingers may be used to heat liquids that the inmate then throws on other inmates or

prison staff and they present a fire hazard or risk of electrical shock); s*ee also Woodson v. Ives*, No. CV 03–0263–MWF (RNB), 2013 WL 3049233, at * (C.D. Calif. June 17, 2013) (adopting Superseding Report and Recommendation finding that DHO was authorized to charge petitioner with violation of Code 108 for possession of a stinger even though incident report only charged petitioner with Code 305, and finding that the stinger was "both unauthorized and a hazardous tool." ).

Petitioner also fails to allege an equal protection violation by arguing that other inmates possessing stingers were only charged with a violation of Code 305. A claimant alleging a violation of the right to equal protection has the burden to prove "the existence of purposeful discrimination," which requires the petitioner to prove that "he received different treatment from that received by other individuals similarly situated and that BOP acted with discriminatory purpose." *Ryan v. Scism*, 474 F. App'x 49, 52 (3rd Cir. 2012) (citing *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987)) (finding no equal protection violation when inmates charged with possession of cellular phone were charged under different severity levels, where petitioner failed to offer evidence that other inmates were similarly situated and petitioner was sanctioned in conformity with the regulation); *see also Espinoza v. Fox*, 2016 WL 4134515, at *3 (C.D. Calif. Aug. 2, 2016) ("Petitioner's allegation that other inmates found with stingers have been charged with lesser violations . . . is irrelevant because the code under which he was sanctioned gave him reasonable opportunity to understand that a stinger was a prohibited hazardous tool.").

Petitioner also claims that the DHO's finding that one of the items was a "cell phone charger" was faulty because "[t]here was no cell phone found." (Doc. 7, at 2.) Many courts have found that possession of a cellular telephone charger violates Code 108, without any suggestion that such a finding is conditioned on finding possession of a cellular telephone. *See*

*Hughes v. Werlinger*, No. 11 C 219, 2014 WL 1670095, at *6 (W.D. Wis. April 28, 2014) ("Code 108 thus confers a degree of latitude to DHOs in determining what is a 'hazardous tool' in the interest of institutional safety, and determining that a cellular telephone charger is a 'hazardous tool' is not clearly wrong or inconsistent with Code 108.") (citing *Douglas v. Zickefoose*, Civ. No. 11 – 406, 2012 WL 266364, at *14 (D.N.J. Jan. 27, 2012 (holding DHO did not abuse his discretion in finding that habeas petitioner had committed Code 108 violation by possessing a cellular telephone charger)).

Petitioner also alleges that the DHO's decision fails to mention the security bit, except when quoting the IR. The DHO's report states that she considered five photos consisting of "a black cord with a dial on the plug, seven adapters, altered black cord with metal pieces throughout, bit, stamp in two pieces, and black and yellow wires with coils on the end." (Doc. 6–1, at 74.) Furthermore, despite finding that Petitioner was in possession of three hazardous tools, Petitioner was only sanctioned for one Code 108 violation.

Petitioner also takes issue with the statement in the DHO's report indicating that the findings were based in part on the DHO's experience, arguing that the DHO had only been a DHO for less than five months at the time of Petitioner's hearing. The DHO's report states that: "Experience has shown that inmates in possession of unauthorized items use the items to sell, barter, or to obtain something extra that is not issued through normal channels." *Id*. at 75. There is no indication that the statement is limited to the DHO's personal experience. Furthermore, there is no reason to believe the DHO would not have personal experience based on her five months of DHO experience in addition to any other correctional experience she may have. Petitioner's argument is not persuasive.

The Court is bound by the "some evidence" standard and finds that the evidence relied upon by the DHO satisfies that standard. "Ascertaining whether [the some evidence] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455–56; *see Mitchell*, 80 F.3d at 1445. "The decision can be upheld even if the evidence supporting the decision is 'meager.'" *Mitchel*, 80 F.3d at 1445 (citing *Hill*, 472 U.S. at 457).

## IV. Conclusion

Petitioner's allegations fail to raise a due process violation under *Wolff*. The Court finds that Petitioner received adequate due process in his prison disciplinary proceedings, and the decision of the DHO is supported by some evidence.

**IT IS THEREFORE ORDERED BY THE COURT** that this petition for writ of habeas corpus is **denied**.

**IT IS SO ORDERED**.

**Dated in Kansas City, Kansas, on this 26th day of May, 2017.**

> **s/ John W. Lungstrum**
> **JOHN W. LUNGSTRUM**
> **UNITED STATES DISTRICT JUDGE**